UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

CARMEN D. MOORE,

       Plaintiff,

    v.

THE CITY OF NEW YORK,

       Defendant.

-------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 21, 2016
```

15 Civ. 4578 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On June 9, 2015, Plaintiff Carmen D. Moore ("Moore" or "Plaintiff") initiated this action against her former employer, the City of New York ("Defendant" or the "City").[1]  Plaintiff asserts claims of disability-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 (the "ADA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131 (the "NYCHRL").  Presently before the Court is Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed in the remainder of this Opinion, Plaintiff's federal claims are dismissed with

---

[1] Plaintiff was employed by the New York City Police Department (the "NYPD"), a "non-suable agency of the City [of New York]." *Jenkins* v. *City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

prejudice, and her non-federal claims are dismissed without prejudice to permit their refiling in state court.

## BACKGROUND[2]

### A.    Factual Background

### 1.    Plaintiff's Employment as a Traffic Enforcement Agent

Beginning in October 1988, Plaintiff was employed by the NYPD as a Traffic Enforcement Agent I ("TEA I").  (Compl. 9).  Plaintiff's responsibilities as a TEA I included "patrol[ing] an assigned area," as well as "prepar[ing] and issu[ing] paper and electronic summonses."  (Answer, Ex. K).  Plaintiff was required to "work[] outdoors in all kinds of weather and patrol[] on foot for long periods of time."  (*Id.*).

Plaintiff claims that, beginning at least as early as 2005, she was beset with a series of mental and emotional infirmities that amounted to a disability.  (*See, e.g.*, Pl. Opp. 12).  Plaintiff attempted to continue working at the NYPD

---

[2]  When assessing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *Roberts* v. *Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam) (citation omitted).  For the purposes of a Rule 12(c) motion, the complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

The facts alleged herein are drawn from Plaintiff's Complaint, and the documents attached thereto (abbreviated as "Compl.," and cited using the page numbers assigned by the Court's electronic case filing ("ECF") system) (Dkt. #1), and Defendant's Answer ("Answer"), and the exhibits attached thereto (Dkt. #22) (abbreviated as "Ex.," and cited using the ECF page numbers, except for the transcript included at Exhibit L, which is cited using the transcript page numbers).  For convenience, Defendant's Memorandum of Law will be referred to as "Def. Br." (Dkt. #25); Plaintiff's Opposition as "Pl. Opp." (Dkt. #28); and Defendant's Reply as "Def. Reply" (Dkt. #29).

through what she terms its "working while disabled" program (*id*.), but found that the TEA job "incapacitate[d her] mentally" (*id*. at 13).  According to Plaintiff, her last day of work before commencing disability leave was December 28, 2009.  (Answer, Ex. C at 3).

### 2. Plaintiff's Charge of Discrimination Based on Her Disability

On July 18, 2011, Plaintiff filed a Charge of Discrimination (the "EEOC Charge") with the Equal Employment Opportunity Commission (the "EEOC") and the New York State Division of Human Rights (the "NYSDHR"),[3] stating that she had been discriminated against on the basis of disability.  (Compl. 9). In broad summary, Plaintiff claimed that (i) she had been diagnosed with a variety of mental conditions, including in particular post-traumatic stress disorder; (ii) prior to going out on medical leave, she had been posted to a position at the NYPD's Bronx Tow Pound that involved "indoor clerical responsibilities" (*id*. at 7, 9); (iii) she sought to return from medical leave to the position at the Tow Pound, which she described as a "reasonable accommodation" (*id*. at 9); and (iv) "[o]n May 4, 2011, without any interactive discussion, [the] NYPD denied my request for a reasonable accommodation" (*id*.).

---

[3]    "In New York, a charge of discrimination may be filed with either the EEOC or the New York State Division of Human Rights.  Moreover, based upon a worksharing agreement between the EEOC and the NYSDHR, charges received by the Human Rights Division are automatically deemed dual-filed with the EEOC."  *Campbell* v. *County of Onondaga*, No. 5:04-CV-1007 (NAM) (GHL), 2009 WL 3163498, at *11 (N.D.N.Y. Sept. 29, 2009) (citations omitted).

On September 24, 2014, after an investigation, the EEOC issued its determination on the merits of Plaintiff's EEOC Charge.  (Compl. 7-8).  It deemed Plaintiff "disabled as defined by the [ADA Amendments Act of 2008]," and further found that Defendant had "failed to provide the reasonable accommodation it had previously granted to [Plaintiff], despite substantial medical documentation[.]"  (*Id.* at 7-8).  The EEOC concluded that "there [was] reasonable cause to believe that Respondent ha[d] discriminated against [Plaintiff] on account of her disability."  (*Id.* at 7).

The EEOC subsequently referred Plaintiff's matter to the Department of Justice (the "DOJ") for investigation.  (Compl. 5).  At the conclusion of its investigation, the United States Attorney's Office for the Southern District of New York sent Plaintiff, via her attorney, a letter, dated February 27, 2015, announcing the DOJ's decision not to file suit and providing Plaintiff with notice of her right to sue within 90 days.  (*Id.* at 5-6).  The DOJ did not make a judgment as to the merits of Plaintiff's case.  (*Id.* at 5).

### 3. Plaintiff's Application for Retirement

Plaintiff did not remain an active member of the NYPD during the pendency of the EEOC investigation.  Instead, one month after filing her EEOC Charge, on August 10, 2011, Plaintiff filed a Report of Personal Disability with the New York City Employees' Retirement System ("NYCERS"); in it, she stated that she was "incapacitated for further service" as a TEA I because of "mental [and] psychological conditions."  (Answer, Ex. B).  On November 1, 2011, Plaintiff completed a Questionnaire for Disability Retirement.  (*Id.*, Ex. C).  She

4

indicated that her application was based on several disabling conditions, including "severe depression, panic attacks, post tra[u]matic stress, [and] anxiety." (*Id.* at 2).  Plaintiff attested that her work as a TEA I included "[w]orking outdoors" and "[w]alking," as well as "interaction and confrontations with [the] public." (*Id.* at 3).  She further alleged that she was "totally and permanently disabled from performing the usual duties of [her] title," and was not able to perform any other work.  (*Id.*).

As an additional component of her disability retirement application, Plaintiff included Reports of Disability from two of her treating physicians, Dr. Charles Robins and Dr. Lauralyn Fredrickson.  (Answer, Ex. D).  Dr. Robins diagnosed Plaintiff with "PTSD from being assaulted on [the] job" and dysthymia,[4] as a result of her "severe hyposomnia," "psychomotor retardation," and "panic attacks." (*Id.* at 2).[5]  Dr. Robins did not indicate a specific date on which Plaintiff could return to the full duties of her job, but reported generally that she was "unable to work." (*Id.*).  Dr. Fredrickson diagnosed Plaintiff with chronic post-traumatic stress disorder, recurrent major depression, and panic, stemming from her "[i]nsomnia, [f]lashbacks, anxiety, nightmares, [p]anic attacks, [and] depressed mood." (*Id.* at 4).  Like Dr. Robins, Dr. Frederickson deemed Plaintiff "unable to return to [her] duties." (*Id.*).

---

[4]    Dysthymia is synonymous with persistent depressive disorder, a chronic form of depression. *Persistent depressive disorder (dysthymia)*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/home/ovc-20166590 (last visited July 20, 2016).

[5]    The information contained in the Report of Disability form signed by Dr. Robins has been entered by at least two individuals, but the Court will accept for purposes of this motion that all of the information in the report comes from Dr. Robins.

Subsequent to Plaintiff's submission of her disability retirement application, she appeared for an examination and interview before NYCERS' Medical Board on January 5, 2012.  (Answer, Ex. E (report of interview)). During the interview, Plaintiff stated that she was "unable to resume work because she d[id] not want to be with people, she d[id] not trust people and she hardly ever [left] her home."  (*Id.* at 4).  The Medical Board concluded that Plaintiff was disabled for the purposes of performing the duties of a TEA I, and recommended that she be approved for disability retirement for a period of one year.  (*Id.*).  The Medical Board requested that Plaintiff be reevaluated after the year elapsed, and that she be reexamined by a NYCERS psychiatric consultant beforehand.  (*Id.*).  The Medical Board ultimately diagnosed Plaintiff with recurrent depressive disorder.  (*Id.*).

On January 13, 2012, NYCERS sent a letter to Plaintiff conveying that her application for disability retirement had been approved, and explaining that she had to reappear before the Medical Board the following year.  (Answer, Ex. F).  Two months later, on March 8, 2012, NYCERS sent another letter to Plaintiff, reporting that the Board of Trustees had adopted the Medical Board's recommendation regarding Plaintiff's application for disability retirement.  (*Id.*, Ex. G).  Plaintiff's date of retirement was set as September 9, 2011.  (*Id.*).

In compliance with the Medical Board's directive, Plaintiff reappeared before it on September 3, 2013.  (Answer, Ex. H).  During her interview, Plaintiff stated that she was "unable to perform her duties as a [TEA I] because she tried to go back many times and she just [could not] do it."  (*Id.* at 3).

6

Additionally, Plaintiff reported that "she was struck by someone" on the job, and was "very fearful" and "d[id] not go outside the house much." (*Id.*).  In response to "clinical and documentary evidence," the Medical Board once again found Plaintiff disabled, and recommended that Plaintiff's disability retirement application be approved.  (*Id.* at 4).  Based on the interview and examination, the Medical Board diagnosed Plaintiff with depression.  (*Id.*).

## B.    Procedural Background

Plaintiff filed the instant Complaint on June 9, 2015.  (Compl. 1).  On December 1, 2015, the Court held a pre-motion conference with the parties to discuss a motion to dismiss that Defendant had expressed its intent to file. (*See* Answer, Ex. L (transcript of conference)).  In response to clarifying questions from the Court, Plaintiff attested that her former attorney initially received the right-to-sue letter from the EEOC; however, she was unsure as to the exact date on which it was received.  (*Id.* at 5:2-6).  Plaintiff stated that upon his receipt of the right-to-sue letter, her then-attorney "put [her] on a conference call" and informed her of the letter's existence.  (*Id.* at 5:6-20). Plaintiff was unable to recall the precise date of this telephone conference.  (*Id.* at 5:21-6:13).  Plaintiff indicated that, with her knowledge and assent, her attorney subsequently entered into settlement negotiations with the NYPD to forestall litigation.  (*Id.* at 4:7-14).  Plaintiff reported that she ultimately disagreed with the NYPD's proposal to resolve the case, at which time her attorney advised her that he could no longer act as her counsel.  (*Id.* at 4:1-22, 7:13-8:10).

During the conference, Plaintiff presented the Court with a letter from her former attorney, dated March 6, 2015. (Answer, Ex. L at 14:4-6). This letter enclosed the right-to-sue letter. (*Id.*). The post-marked envelope indicated that Plaintiff's former attorney sent her these letters on March 18, 2015. (*Id.* at 14:1-3). Plaintiff claimed she received them on March 20, pursuant to a handwritten notation she made on the mailing envelope. (*Id.*).

Additionally, Plaintiff provided further detail concerning the reasonable accommodation she had sought. She explained that she came to be assigned to the Bronx Tow Pound when she started "having a lot of medical stuff going on mentally" and "found out that [she] could not work in the streets" following the assault. (Answer, Ex. L at 9:4-13). Plaintiff recalled "having panic attacks out in the streets and anxiety." (*Id.* at 9:16-17). As a result, Plaintiff's doctors wrote letters on her behalf advising the NYPD that her medical conditions precluded her from continuing to work outside as a TEA I. (*Id.* at 9:15-18). According to Plaintiff, a police chief at One Police Plaza approved her reassignment to the Bronx Tow Pound. (*Id.* at 9:20-10:1).

Plaintiff confirmed for the Court that she eventually ceased working at the Bronx Tow Pound as a result of her illness. (Answer, Ex. L. at 10:2-4). When Plaintiff sought to return to work with the NYPD after her illness had subsided, the commanding officer at the Bronx Tow Pound wrote a letter on Plaintiff's behalf requesting that she return to work at that site. (*Id.* at 10:5-17). Plaintiff claimed that she "went to [the commanding officer] personally" to

request that she return to the Tow Pound, and he expressed willingness to reinstate her to her previous position.  (*Id.*).

Moving forward in the chronology of events, Plaintiff detailed her attempts to speak with the commanding officer responsible for assigning employees in the traffic department regarding her desire to return to the Bronx Tow Pound.  (Answer, Ex. L at 11:4-12:6).  Plaintiff claimed that the commanding officer "would not talk to [Plaintiff] because [she] got upset, and [she] was crying[.]"  (*Id.* at 11:14-15).  Plaintiff stated that she was eventually sent to the 34th Street command, and was told that she had to "go back in the streets."  (*Id.* at 12:1-16).  Plaintiff indicated to the Court that she attempted to return to work as a TEA I; however, she was unable to remain in this position due to her mental health issues.  (*Id.* at 12:19-25).

In response to Plaintiff's representations regarding her and her former attorney's receipt of the right-to-sue letter, Defendant indicated its intent to challenge Plaintiff's federal claims on the grounds that her complaint had not been filed in a timely manner.  (Answer, Ex. L at 14:24-15:14).  The Court explained to Plaintiff that if Defendant prevailed on its motion with respect to the timeliness issue, the Court would be required to dismiss her federal claims. (*Id.* at 23:5-16).  The Court further noted that Defendant's success on the timeliness issue would not vitiate Plaintiff's state and local claims; however, these pendent claims would likely need to be renewed in state court.  (*Id.* at 23:17-24:4).  The Court also accentuated the fact that the EEOC determined in its letter that the NYPD failed to provide the reasonable accommodation that it

9

had previously granted to Plaintiff, and therefore there was a possibility that Plaintiff could succeed on the merits of her case. (*Id.* at 17:9-16).

Defendant ultimately filed its motion to dismiss on February 1, 2016. (Dkt. #23-27). Plaintiff submitted her opposition to Defendant's motion on April 15, 2016. (Dkt. #28). Defendant concluded the briefing with the filing of its reply on April 26, 2016. (Dkt. #29).

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Defendant refers in its motion to both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, and so the Court will discuss both provisions. Under Federal Rule of Civil Procedure 12(b)(1), dismissal of a case is warranted "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted). Moreover, where subject matter jurisdiction is contested, a district court is permitted to consider

10

evidence outside the pleadings, such as affidavits and exhibits.  *See Zappia Middle East Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *accord Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

### 2. Motion for Judgment on the Pleadings Under Fed. R. Civ. P. 12(c)

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel* v. *Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases); *accord Sewell* v. *Bernardin*, 795 F.3d 337, 339 n.3 (2d Cir. 2015).  In considering a motion for judgment on the pleadings, a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  Accordingly, a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face" and must sufficiently "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (quoting *Twombly*)).  A court is not, however, obligated to accept "conclusory allegations or legal conclusions

masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotations omitted).

### 3.    Consideration of Submissions from *Pro Se* Plaintiffs

When ruling on a motion to dismiss a *pro se* plaintiff's complaint, district courts are instructed to "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel* v. *Board of Educ. of City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002) (internal quotation marks and alterations omitted).[6] It is well established that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation and quotation marks omitted). Nonetheless, a *pro se* plaintiff's factual allegations must be at least "enough to raise a right to relief above the speculative level" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.  Moreover,

> while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12. Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.   Stated more

---

[6]    Indeed, without concluding that this action must be undertaken in all *pro se* cases, the Court has considered facts presented for the first time in Plaintiff's opposition papers in resolving the instant motion. *Cf. Williams* v. *Correction Officer Priatno*, — F.3d —, No. 14-4777-cv, 2016 WL 3729383, at *2 n.1 (2d Cir. July 12, 2016) ("Some allegations concerning the circumstances of Williams's attempted filing of his grievance are taken from his pro se opposition to the motion to dismiss, which we may consider in resolving this appeal." (citations omitted)).

> plainly, when a plaintiff is proceeding *pro se*, "all normal
> rules of pleading are not absolutely suspended."

*Dallio* v. *Hebert*, 678 F. Supp. 2d 35, 55-56 (N.D.N.Y. 2009) (internal citations

and footnotes omitted).

## B.   Discussion

### 1.   Plaintiff May Not Bring Her Disability Discrimination Claim Under Title VII

Plaintiff's Title VII claim can be rejected in short order.  The Title VII

statute prohibits discrimination in, among other things, the terms and

conditions of employment based on an individual's race, color, religion, sex, or

national origin.  42 U.S.C. § 2000e-2(a)(1).  It does not, however, bar disability

discrimination.  *See Risco* v. *McHugh*, 868 F. Supp. 2d 75, 107 (S.D.N.Y. 2012)

(citing *Prince* v. *Westchester Cty. Dept. of Health*, No. 90 Civ. 2506 (TPG), 1992

WL 123170, at *4 (S.D.N.Y. May 27, 1992)); *see also* 42 U.S.C. § 12101(a)(4)

(finding by Congress that passage of ADA was necessary because "unlike

individuals who have experienced discrimination on the basis of race, color,

sex, national origin, religion, or age, individuals who have experienced

discrimination on the basis of disability have often had no legal recourse to

redress such discrimination").  In her complaint, Plaintiff alleges discrimination

solely on the basis of disability, and makes no claims involving any of the

protected classes that are within the scope of Title VII.  (Compl. 3).

Accordingly, Plaintiff's Title VII claim must be dismissed.

## 2.     Plaintiff's Title VII and ADA Claims Must Be Dismissed As Untimely

A second basis exists for dismissal of Plaintiff's Title VII claim, and this basis is equally applicable to Plaintiff's other federal claim, which is brought under the ADA: Defendant is correct that Plaintiff did not file her complaint within the requisite time frame provided by Title VII and the ADA, and has provided no basis for the extraordinary remedy of equitable tolling, and thus her federal claims under those two statutes must be dismissed.  (*See* Def. Br. 7-8).

### a.     Plaintiff's Complaint Was Filed Outside the 90-Day Limitations Period

A plaintiff asserting a claim under Title VII or the ADA must file her complaint within 90 days of receiving the right-to-sue letter.  *See, e.g.*, *Wynder* v. *McMahon*, 360 F.3d 73, 76 (2d Cir. 2004) (citation omitted) (Title VII); *Johnson* v. *St. Barnabas Nursing Home*, 368 F. App'x 246, 247-48 (2d Cir. 2010) (summary order) (Title VII and ADA); *see also* 42 U.S.C. § 2000e-5(f)(1) (setting forth the 90-day limitations period under Title VII); *id.* § 12117(a) (extending the Title VII time limitation to the ADA).  A plaintiff's failure to file a claim within the time limits set by Title VII or the ADA will ordinarily preclude her from pursuing that claim in federal court, and can warrant dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See generally Frederick* v. *Jetblue Airways Corp.*, No. 14 Civ. 7238 (DLI), 2016 WL 1306535, at *3-4 (E.D.N.Y. Mar. 31, 2016) (concluding that the applicable rule is Fed. R. Civ. P. 12(b)(6), and not Fed. R. Civ. P. 12(b)(1)).  That said, the filing requirements

of Title VII and the ADA are *not* jurisdictional and, like statutes of limitations, are subject to equitable tolling.  *See, e.g.*, *Zerilli-Edelglass* v. *N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003).

The Second Circuit has concluded that the 90-day period "begins to run on the date that a right-to-sue letter is first received *either by the claimant or by the claimant's counsel, whichever is earlier.*"  *Tiberio* v. *Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) (emphasis added).  Under normal circumstances, there exists an assumption that "notice provided by a government agency has been mailed on the date shown on the notice," and "a mailed document is received three days after its mailing."  *Sherlock* v. *Montefiore Med. Ctr.*, 84 F.3d 522, 525-26 (2d Cir. 1996).  This presumption may be rebutted by admissible evidence that the document was not mailed, was received late, or was never received, *id.* at 526, but "[t]he mere denial of receipt does not rebut that presumption," *Meckel* v. *Continental Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985).  *See also Sherlock*, 84 F.3d at 526 ("Neither that proffer of inadmissible evidence nor [Plaintiff's] own lack of recollection sufficed to rebut the presumption that the letter had been received by February 18.").

In the instant case, the right-to-sue letter sent by the DOJ to Plaintiff's then-attorney is dated February 27, 2015.  (Compl. 5).  Plaintiff has not suggested, nor does anything in the record indicate, that counsel did not receive that letter within three days of that date.  Plaintiff did not know when her attorney received the letter; she recalled speaking with the attorney or someone at his office "when they first received the letter," but could not recall

specifics.  (Answer, Ex. L at 4:11-12, 5:5-6:13).  Plaintiff also recalled a series of discussions with counsel during this time period regarding settlement with the City in lieu of litigation, at the end of which she rejected the settlement offer and elected to file a lawsuit without counsel.  (*Id.* at 4:11-22, 6:21-8:13).

At the pre-motion conference on December 1, 2015, Plaintiff presented the Court with a letter, dated March 6, 2015, addressed to Plaintiff from her former attorney and enclosing the February 27 right-to-sue letter.  (Answer, Ex. L at 13:4-14:6).  Defendant argues from this that Plaintiff's counsel received the right-to-sue letter no later than March 6, 2015, such that the 90-day limitation would have elapsed on June 4, 2015.  (Def. Br. 8 & n.7). Plaintiff did not file the instant action until June 9, 2015.  (Compl. 1).  On this record, the Court agrees that Plaintiff's federal claims under Title VII and the ADA are untimely, unless there is a basis for tolling the 90-day limitations period.  The two possible bases are discussed in the remainder of this subsection.

### b.    Plaintiff's Mental Illness Does Not Warrant Equitable Tolling

Although the 90-day limit is "a statutorily-imposed requirement necessitating strict adherence," *Celestine* v. *Cold Crest Care Ctr.*, 495 F. Supp. 2d 428, 432 (S.D.N.Y. 2007), equitable tolling may be warranted where (i) a party "has acted with reasonable diligence during the time period she seeks to have tolled," and (ii) the party "has proved that the circumstances are so extraordinary that the doctrine should apply," *Zerilli-Edelglass*, 333 F.3d at 80-81 (citation omitted).  *See also Pace* v. *DiGuglielmo*, 544 U.S. 408, 418 (2005)

16

(noting that a party seeking equitable tolling must demonstrate extraordinary circumstances); *see generally South* v. *Saab Cars USA, Inc.*, 28 F.3d 9, 11-12 (2d Cir. 1994) (stating that grounds for equitable tolling of the 90-day limitations period for filing federal employment discrimination claims may include circumstances: (i) "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period"; (ii) "where the claimant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"; (iii) "where the court has led the plaintiff to believe that she had done all that was required of her"; (iv) "where affirmative misconduct on the part of the defendant may have lulled plaintiff into inaction"; (v) "where the claimant has received inadequate notice"; and (vi) "where a motion for appointment of counsel is pending").

The Second Circuit has permitted equitable tolling in circumstances where "a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Zerilli-Edelglass*, 333 F.3d at 80-81; *see also, e.g., Brown* v. *Parkchester S. Condos.*, 287 F.3d 58 (2d Cir. 2002). In determining whether to exercise its discretion to allow tolling based on mental illness, a court must look for a "particularized description of how [the plaintiff's] condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights[.]" *Boos* v. *Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *see also id.* at 184 ("As [*Canales* v. *Sullivan*, 936 F.2d 755, 759 (2d Cir. 1991),] indicates, the question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is, under the law of

17

this Circuit, highly case-specific.").  "The burden of demonstrating the appropriateness of equitable tolling, however, lies with the plaintiff."  *Id.* at 185.

Here, Plaintiff admits to having "totally forgotten about the letter" because she was "going through some heavy and critical treatment that made [her] forget and made [her] brain foggy." (Pl. Opp. 6).  She claims that she "could not remember one second to the next." (*Id.*).  Viewing Plaintiff's *pro se* submission in the light most favorable to her position, the Court understands Plaintiff to be arguing that she is entitled to equitable tolling because her mental infirmities prevented her from filing her complaint within the 90-day period.  However, a review of the relevant materials confirms that, even crediting Plaintiff's statements regarding her then-existing mental condition, her episodes of inattention were at worst intermittent, and cannot be said to have prevented her from timely filing a complaint.  *Cf. Bolarinwa* v. *Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (citing *Zerilli-Edelglass*, *Brown*, *Boos*, and *Canales* in support of conclusion that, "in order to justify tolling of the AEDPA one-year statute of limitations due to mental illness, a habeas petitioner must demonstrate that her particular disability constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so").

Plaintiff does provide information about the conditions with which she was diagnosed, but has not provided a "particularized description" sufficient to demonstrate that she was wholly incapable of pursuing her legal rights during the period in question.  Quite to the contrary, Plaintiff acknowledged that she

18

was represented by counsel for some period of time after receiving the right-to-sue letter; there is no suggestion that counsel was laboring under any comparable impediments, and Plaintiff was lucid enough to discuss with counsel during the 90-day period both a strategy for settlement discussions with Defendant and a fallback position after Plaintiff rejected Defendant's settlement offer, the latter of which resulted in Plaintiff's ultimate decision to file the instant lawsuit *pro se.* (Answer, Ex. L at 4:7-22, 6:21-8:13). All of this suggests a lack of diligence on Plaintiff's part concerning the 90-day filing deadline. And while describing the alleged limitations caused by her illness, Plaintiff simultaneously relates that she was aware that she might have missed the deadline to file her complaint, at which point she telephoned the EEOC to inquire. (Pl. Opp. 6). Even if Plaintiff's telephone call can be considered "reasonable diligence," this affirmative act confirms that her mental infirmities were not so severe that they constituted an "extraordinary" circumstance preventing her from exercising her legal rights. Thus, the Court finds, as a matter of law, that Plaintiff is not entitled to equitable tolling based on mental illness.

### c.     The Information Allegedly Provided by the EEOC Does Not Warrant Equitable Tolling

Plaintiff also suggests that her otherwise-untimely federal claims should be accepted because of information that she received from an EEOC employee whom she identifies as Mr. Perez, to the effect that the "countdown of the days" did not start until she got the right-to-sue letter "on [her] person, in [her] hand." (Opp. 6). As Plaintiff explains, she had all but forgotten about the letter

> [u]ntil one day I said[,] Oh my Gosh, I was suppose[d] to turn in that [paperwork] and thought I had missed the deadline. I spoke to Mr. Perez at the EEOC and counted the date down to the wire and I was safe, so my son delivered the papers by hand!

(*Id.*; *see also id.* ("I just made the deadline!")). In reply, Defendant argues that, even if Plaintiff did receive incorrect advice, she might have a claim against the EEOC, but her claim against Defendant would still be time-barred. (Def. Reply 3).

The Court considers first the legal underpinnings of Plaintiff's tolling argument. Under Second Circuit law, it is "questionable" whether the EEOC's acts warrant equitable tolling when the EEOC is not a party to a plaintiff's complaint. *See Vernon* v. *Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 891 (2d Cir. 1995); *see also id.* (suggesting that conduct at issue should "amount to affirmative misconduct on the government's part aimed at causing [the plaintiff] to forego his legal rights" (internal quotation marks and citation omitted)); *but cf. Johnson* v. *Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (noting earlier district court decision that erroneous advice by EEOC official could warrant equitable tolling, but refraining from deciding the issue in the absence of admissible substantiation from plaintiff). Even assuming tolling would be permitted where the EEOC is not a party, "affirmative misconduct on the government's part" has been required to allow an extension of time. *Long* v. *Frank*, 22 F.3d 54, 59 (2d Cir. 1994). Plaintiff has offered no evidence indicating that the EEOC was intentionally and affirmatively taking steps to thwart her pursuit of legal recourse.

20

More recently, several courts in this District have declined to permit equitable tolling where a plaintiff makes unsupported allegations that she received misinformation from the EEOC regarding the period in which she could file a lawsuit.  *See, e.g.*, *Tsai* v. *Rockefeller Univ.*, No. 00 Civ. 329 (SAS), 2002 WL 237843, at *4 (S.D.N.Y. Feb. 15, 2002) (quoting and adopting Fifth Circuit decision that found tolling unwarranted because it would be "virtually impossible for the EEOC or a defendant to rebut a plaintiff's unsupported allegation that the EEOC provided incomplete information in a telephone conversation," given the volume of calls the EEOC receives every day), *aff'd sub nom. Li-Lan Tsai* v. *Rockefeller Univ.*, 46 F. App'x 657 (2d Cir. 2002) (summary order).

The Court acknowledges that equitable tolling has been permitted in situations where a plaintiff relied on representations made by the EEOC and the circumstances of the reliance were deemed "extraordinary."  *Compare Walker* v. *Linklaters LLP*, 948 F. Supp. 2d 396, 400 (S.D.N.Y. 2013) (finding sufficient factual basis for equitable tolling in part because EEOC's alleged misinformation in the course of frequent contacts with plaintiff constituted extraordinary circumstance), *with Miller* v. *St. Luke's Roosevelt Hosp. Ctr.*, No. 15 Civ. 7019 (VEC) (GWG), 2016 WL 1275066, at *6 (S.D.N.Y. Apr. 1, 2016) (deeming non-extraordinary EEOC's potentially incorrect advice that plaintiff could wait until termination to file charge, given plaintiff's lack of diligence), *report and recommendation adopted*, 2016 WL 2939175 (S.D.N.Y. May 18, 2016); *cf. Swergold* v. *Murray*, — F. App'x —, No. 15-3905-cv, 2016 WL

3854441, at *1 (2d Cir. July 12, 2016) (summary order) (concluding that
neither plaintiff's reliance on district court opinion in derogation of Second
Circuit law nor "plaintiff's misreading of a sound district court decision" would
constitute "extraordinary circumstance" justifying equitable tolling).

The Court shares the skepticism inherent in the *Vernon* and *Tsai*
decisions.  That said, even apart from the legal hurdles, Plaintiff has serious
factual issues with this particular equitable tolling argument.  For one thing,
Plaintiff's timeline is not consistent: While she avers in her Complaint that she
received the right-to-sue letter on March 20, 2015 (*see* Compl. 4; *see also*
Answer, Ex. L at 14:2-3 (referring to Plaintiff's handwritten notation on the
envelope containing the right-to-sue letter that she received it on March 20,
2015)), she maintains in her opposition papers that she received the letter on
"March 22nd Saturday evening" (Pl. Opp. 6).  Moreover, the Court identifies a
certain illogic in Plaintiff's claim that she "just made the deadline" with a
June 9, 2015 filing (*id.*), if she was in fact advised by Mr. Perez (and believed)
that a receipt date of March 20 (or 22), 2015, governed the deadline for filing.

Reading Plaintiff's claims in light of the solicitude afforded *pro se*
litigants, the Court has examined the purportedly erroneous advice that
Plaintiff received, and has found it inadequate to support equitable tolling.
Plaintiff alleges that the EEOC advised her that the 90-day period in which she
could timely file began when she personally received the right-to-sue letter.  (Pl.
Opp. 6).  As in *Miller*, there is nothing factually inaccurate or extraordinary
about the EEOC's advice to Plaintiff; it is at most incomplete because it fails to

address receipt by counsel).  Moreover, Plaintiff provides no indication in her
submission that she informed the EEOC during this telephone call of her
contemporaneous knowledge that her attorney had already received the right-
to-sue letter, or that her attorney had been actively engaging for a period of
time in settlement discussions with the NYPD in order to stave off this precise
litigation.  Plaintiff's apparent failure to disclose to Mr. Perez all of the
circumstances surrounding her receipt of the right-to-sue letter renders it even
less likely that the statements ascribed to him could support equitable tolling
of the statute of limitations.  Finally, even were the Court to conclude that Mr.
Perez had given erroneous advice, it would not find that equitable tolling was
warranted, because the advice that he is said to have given did not cause
Plaintiff to delay filing her complaint, but rather prompted her to have it hand-
delivered immediately in order to "just ma[k]e the deadline."  (*Id.*).  In sum,
considering with care all of the facts identified by Plaintiff, the Court sees no
basis for equitable tolling of Plaintiff's deadline to file her Title VII and ADA
claims, and Defendant's motion to dismiss is granted as to those claims.[7]

---

[7]     Given Plaintiff's *pro se* status, the Court considered whether to grant leave to replead.
While a *pro se* complaint "should not be dismissed without granting leave to amend at
least once when a liberal reading of the complaint gives any indication that a valid claim
might be stated," *Shomo* v. *City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)
(alterations omitted), leave to replead need not be granted where — as here — it would
be "futile," *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  At the pre-motion
conference, the Court had extensive discussions with Plaintiff regarding the sequence of
events that led to her late filing, and after considering those discussions and the
content of Plaintiff's opposition submission, the Court is confident that Plaintiff has
made all of the arguments regarding timeliness and tolling that this record can fairly
support.

### 3. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's NYSHRL and NYCHRL Claims

A district court "may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In deciding whether to exercise supplemental jurisdiction, courts are directed to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity[.]" *Lundy* v. *Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013) (internal quotation marks omitted). "Once all federal claims have been dismissed, the balance of factors will 'usually' point toward a declination." *Id.* at 118 (brackets omitted).

In addition to her claims under federal law, Plaintiff alleges disability discrimination under NYSHRL and NYCHRL. (Compl. 1). As all of Plaintiff's federal claims have been dismissed, the Court declines to extend supplemental jurisdiction over her municipal law claims. This decision is consistent with the practice in this District, as "courts regularly decline jurisdiction over NYSHRL and NYCHRL claims once the federal employment claims have been dismissed." *Harris* v. *NYU Langone Med. Ctr.*, No. 12 Civ. 0454 (RA), 2014 WL 941821, at *2 (S.D.N.Y. Mar. 11, 2014).

Having considered, without resolving the merits of, the parties' arguments, the Court recognizes the tension between certain of Plaintiff's statements to this Court and her statements to NYCERS; at the same time, the Court believes that Defendant may have too narrow a view of what a reasonable accommodation is, and when the failure to provide it can be actionable under

federal, state, or local law.  As the Court stated in the pre-motion conference, this case is notable because the EEOC found merit to Plaintiff's claims in its September 24, 2014 letter.  (*See* Compl. 7-8).  Defendant advised the Court at that conference that it would not pursue mediation until the instant motion was resolved.  (Answer, Ex. L at 34:8-16).  In light of the Court's dismissal of Plaintiff's federal claims, and its deliberate decision not to address the merits of her claims, the parties might wish to consider mediation in conjunction with, or in lieu of, the repleading of Plaintiff's NYSHRL and NYCHRL claims in state court as the most just means to resolve this litigation.

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED in full. Plaintiff's claims under Title VII and the ADA are dismissed with prejudice. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims, they are dismissed without prejudice.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      July 21, 2016
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*

Carmen D. Moore
626 Riverside Drive, Apt. 13E
New York, NY 10031